UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENJAMIN DUGGAN,

        Plaintiff,

v.

NANCY A. BERRYHILL,

        Defendant.

CASE NO. 3:17-cv-5451-BAT

**ORDER REVERSING AND REMANDING**

Benjamin Duggan seeks review of the denial of his applications for disability insurance benefits and supplemental security income. He contends the Administrative Law Judge ("ALJ") erred when he: (1) failed to subpoena state agency consultant Matthew Comrie, Psy.D.; (2) improperly weighed the medical opinions of examining psychologist Terilee Wingate, Dr. Brent Packer, and state agency psychological consultant Matthew Comrie, Psy.D., and (3) improperly rejected Mr. Duggan's testimony. Dkt. 11.

The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Mr. Duggan was born in 1983 and was 30 years old at the time of his alleged onset date of May 1, 2013. Tr. 310. He suffers from mental and physical impairments which he claims prevent him from returning to sustained, competitive, full-time employment. Mr. Duggan has

ORDER REVERSING AND REMANDING - 1

not worked since October 31, 2012, but has been attending Evergreen State College since the winter of 2013, although he reports difficulty in maintaining regular attendance due to medical appointments and frequent anxiety attacks. Tr. 330-332; 859.

Mr. Duggan protectively filed Title II and Title XVI applications on July 9, 2013, with an alleged onset date of May 1, 2013. Tr. 290. Medical opinions issued from the state agency and in consultative examinations found that Mr. Duggan would have significant limitations in areas such as maintaining a schedule and attendance, completing a normal workday or work week without psychological interruption, and interruptions in maintaining concentration for extended periods. Tr. 444-445, 717-718, 860. A physical consultative examination found only non-exertional limitations and the state agency determined he would be limited to medium exertion. Tr. 442-444, 867-868.

Mr. Duggan's case proceeded to a hearing before ALJ David Johnson on July 20, 2015. Tr. 290, 323-383. Utilizing the five-step disability evaluation process,[1] the ALJ found Mr. Duggan's severe impairments included Obesity, Psoriasis, Neck Pain from Degenerative Disc Disease, Panic Disorder, Major Depressive Disorder, and a history of alcohol abuse. Tr. 293 (September 18, 2015 Decision).

The ALJ determined that Mr. Duggan had the Residual Functional Capacity (RFC) to perform a full range of work at all exertional levels with several non-exertional limitations. Tr. 299. At steps four and five, the ALJ found that these limitations would still allow Mr. Duggan to perform his past work as a painter, and the additional identified occupations of janitor, hotel/motel housekeeper, and hand packager. Tr. 310-313. Mr. Dugan's request for review was denied. Tr. 5-8.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**A.     The ALJ's Handling of Subpoena Request**

At the hearing, Mr. Duggan's attorney asked the ALJ to subpoena state agency consultant Matthew Comrie, Psy. D. so that he could provide further explanation for his December 6, 2013 Disability Determination Explanation (DDE).  Tr. 372.  This request arose after Mr. Duggan's attorney attempted to question the Vocational Expert (VE) with language contained in a printed question on the DDE.  The relevant questions and Dr. Comrie's responses are shown in pertinent part here:

> The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion.
>
> . . .
>
> **The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace <u>without an unreasonable number and length of rest periods</u>.**
>     *Moderately limited*
>
> **Explain in narrative form the sustained concentration and persistence capacities and/or limitations**
>     *The claimant may have interruptions for maintaining concentration for extended periods due to his residual sxs*

Tr. 444-445 (underlining added).  When counsel presented the VE with a hypothetical using the term "without an unreasonable number and length of rest periods," the ALJ disallowed the questioning because the word "unreasonableness" lacked a quantifiable degree of limitation:

> … So, if you think that there is a degree of limitation that the evidence supports, feel free to ask her about that degree of limitation.  But, I'm not going to allow you to ask about general things like unreasonableness.  Even though it might be in the record, that isn't a quantifiable degree of limitation that gives us any understanding.
> …

> I'm not going to let you ask about a term that I don't know what it means because that's not going to lead to useful evidence that helps the judge fairly. The purpose of your questioning is to help me understand Dr. Duggan's condition and help me understand how that might relate to work-related issues. So, you got to ask something that's going to end up to get me to understand what it means. If you ask if it's reasonable, all I'm getting then is an unknown basis for the judgment of reasonableness and that's not the proper function of any witness.

Tr. 370-72. Mr. Duggan's attorney then made a motion to subpoena Dr. Comrie "to present him new questions that have real specific vocational language because … DDS working with the agency gave him these questions and if they're no good, then I can't use his statements." Tr. 372. In his written opinion, the ALJ explained why he decided the subpoena was not necessary:

> At the hearing, the claimant, through his representative, requested a subpoena for Matthew Comrie, Psy.D., the state consultant who evaluated the claimant's records at the reconsideration level in December 2013. This subpoena was not requested 5 days prior to the hearing pursuant to 20 CFR Sections 404.950(d)(2) and 416.1450(d)(2). Additionally, the testimony of Dr. Comrie is not reasonably necessary for the full presentation of the case since additional evidence after his evaluation provides further understanding of the claimant's situation. Consequently, the claimant's request for a subpoena is denied.

Tr. 290. It is not disputed that Mr. Duggan did not request the subpoena five days prior to the hearing as required by 20 C.F.R. §§ 404.950(d)(2) and 416.1450(d)(2). The issue here is whether Dr. Comrie's testimony was reasonably necessary for the full presentation of the case and the Court concludes that it was not.

The ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). An ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir.2001); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996).

Mr. Duggan argues that by the ALJ's own explanation, Dr. Comrie's opinion was ambiguous but the Court fails to find support for this conclusion. While counsel was merely repeating the language of a question contained in the DDE, Dr. Comrie's opinion of Mr. Duggan's mental residual functional capacity is the sum of his responses and narrative explanation of why he considered Mr. Duggan "moderately limited" in "sustained concentration and persistence capacities," *i.e.*, due to "interruptions for maintaining concentration for extended periods[2] due to his residual sxs." Tr. 444-445. Regardless, the record reflects that the ALJ gave less weight to Dr. Comrie's opinion, not due to the ambiguity of "unreasonable," but because he felt the opinion was inconsistent with other evidence (*i.e.*, Mr. Duggan's full-time school attendance and regular indications of normal memory and concentration). Tr. 307. Thus, the ALJ's conclusion that the testimony of Dr. Comrie was not necessary because he relied on additional evidence to further understand Mr. Duggan's situation was not error. Whether the ALJ erred in giving only partial weight to Dr. Comrie's opinion is another question, which is addressed below with regard to the ALJ's assessment of medical evidence.

Mr. Duggan also claims that the ALJ's failure to subpoena Dr. Comrie violated his due process rights. Social security disability applicants are entitled to due process in the adjudication of their claims (*see Richardson v. Perales*, 402 U.S. 389, 398 (1971) and *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir.1990)). However, Mr. Duggan provides no authority for the proposition that his due process rights required the ALJ to subpoena Dr. Comrie. Neither does the record support a finding that the ALJ's failure to do so, in the context of the whole case, was

---

[2] Arguably, the words "for extended periods" may also benefit from additional clarification. However, if Mr. Duggan felt that further elaboration of any part of Dr. Comrie's opinion was necessary for a complete evaluation by the ALJ, he could have requested a subpoena for Dr. Comrie prior to the hearing.

1  "so extreme as to display clear inability to render fair judgment." *See e.g.*, *Rollins v. Massanari*,
2  261 F.3d 853, 858 (9th Cir.2001).

**B.     The ALJ's Assessment of Medical Evidence**

Mr. Duggan contends that all of the medical opinions at issue support a conclusion that he is unable to consistently complete a workday and workweek without interruptions from his panic disorder and that the ALJ failed to provide clear and convincing reasons to discredit the opinions. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing reasons." *Id*. at 830-31. Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).

**1.     Terilee Wingate, Ph.D. – Examining Physician**

Dr. Wingate examined Mr. Duggan on May 15, 2013 (Tr. 715-722) and February 12, 2015 (Tr. 857-860). In 2013, Dr. Wingate assigned a GAF score[3] of 55 and concluded that Mr. Duggan had moderate limitations in "performing activities within a schedule, maintaining regular attendance and being punctual, maintaining appropriate behavior in a work setting, and completing a workday or workweek without suffering psychologically-based interruptions." Tr.

---

[3] A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. Diagnostic and Statistical Manual of Mental Disorders 20 (3rd ed., rev.1987). A GAF score of 55 indicates at least moderate symptoms or moderate difficulty in social, occupational, or social functioning. *Id*. at 12. *Vargas v. Lambert,* 159 F.3d 1161, 1164 n.2 (9th Cir.1998).

717-718. In 2015, Dr. Wingate again assigned a GAF score of 55 and concluded that although Mr. Duggan is able to understand, remember and learn simple and some complex tasks, he "has difficulty sustaining attention to tasks throughout a daily or weekly work schedule without interruption from anxiety and depressed mood." Tr. 860. She also stated that he has some difficulty with stress tolerance and when pressures are placed on him, he will likely withdraw. *Id.*

The ALJ concluded that the GAF scores and Dr. Wingate's noted limitations in 2013 were inconsistent with: (a) full time school attendance, paying attention in class, shopping, cooking, performing household chores, playing with son, and spending time with friends; (b) a recommendation that vocational training could minimize or eliminate barriers to employment; and (c) other "normal" findings. Tr. 309. As to Dr. Wingate's 2015 opinion, the ALJ concluded that the GAF score and noted limitations were inconsistent with full time school attendance and observations of normal memory and concentration. Tr. 308.

Prior to examining the ALJ's stated reasons why the GAF scores and Dr. Wingate's opinions are "inconsistent," the Court notes separately that the ALJ's rejection of the GAF scores assigned by Dr. Wingate was error because he failed to provide a valid reason to reject them. The only specific reason given by the ALJ for rejecting the GAF scores is that they are based on Mr. Duggan's "subjective assertions, which in this case lack credibility." Tr. 308. However, an ALJ may not reject an examining doctor's opinion by questioning the credibility of the claimant's complaints where the doctor does not discredit those complaints and supports her ultimate opinion with her own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001). Here Dr. Wingate did not "discredit" Mr. Duggan's complaints, performed a clinical exam, made observations of Mr. Duggan's behavior and administered psychological tests. There

ORDER REVERSING AND REMANDING - 7

is no basis to conclude that the doctor's opinions relied more heavily on Mr. Duggan's subjective statements than on her own clinical examination and assessment.

The remainder of the ALJ's discussion of the GAF scores consists of a boilerplate discussion of why GAF scores do not correlate with a finding of disability, are not relevant evidence and can be ignored. This is an erroneous view that is inconsistent with the Social Security regulations. A GAF score that is assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), and an ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the record, including medical source opinions, 20 C.F.R. §§ 404.1545(a), 416.945(e). *See also*, *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001) (a GAF score is relevant evidence bearing on the disability determination); *cf. Pinegar v. Comm'r of Soc. Sec. Admin.*, 499 Fed Appx. 666, 667 (9th Cir. 2012) ("[T]his Court has not found error when an ALJ does not consider [GAF scores]." (citing *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009)). Because the approach in *Rollins* aligns with the Social Security regulations, the Court follows it here and finds that the ALJ erred in rejecting the GAF scores based on Mr. Duggan's subjective assertions and for the reasons stated below.

**(a)     School Attendance and Other Activities**

Mr. Duggan's attendance at Evergreen College consists of four to five hours in-class per week, and out-of-class homework, which when combined, according to Mr. Duggan adds up to about 40 hours per week. Tr. 331-332. While class evaluations indicate Mr. Duggan seems to excel and wants to learn (Tr. 305-306), Mr. Duggan also reports that he has difficulty maintaining regular attendance due to medical appointments and frequent anxiety attacks and that these absences are affecting his educational progress. Tr. 859-860; Tr. 330 (missed 1 ½

weeks in a five week semester); Tr. 907 (missed 9 sessions; "should be a junior by now and I'm not").

The Court concludes that the ALJ erred in concluding that Mr. Duggan's schooling was inconsistent with Dr. Wingate's opinion that he has "difficulty sustaining attention to tasks throughout a daily or weekly work schedule without interruption from anxiety and depressed mood." According to Mr. Duggan, he has been able to maintain his college attendance because he is able to miss classes and is not required to be in class for eight hours a day. Even if the ALJ discounted this testimony, he failed to explain how the concentration and attention required to attend college (or shop, cook, perform household chores, play with a child, and spend time with friends) translates to the sustained concentration and attention required to work a full eight hour day and forty hour week with minimal interruptions due to anxiety attacks.

The record reflects that the majority of Mr. Duggan's schoolwork was done outside of the classroom and he was frequently absent. *See*, *e.g*., Tr. 859, 907. Mr. Duggan's ability to work on homework at his own pace, and to leave classrooms when he has a panic attack are special accommodations that would not be present in a work setting. *See Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir.1984) (many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication). *Id.*; *see also*, SSR 96-8p ([residual functional capacity] is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule).

Thus, the ALJ erred in concluding that Dr. Wingate's stated limitations were undermined by Mr. Duggan's course work or other activities.

### (b) Vocational Training

The ALJ reasoned Dr. Wingate's opinion that vocational training may "minimize or eliminate barriers to employment" was "inconsistent with her reported limits." Tr. 309. The reference to vocational training appears as a printed question under "Prognosis/Plan" on the form completed by Dr. Wingate. Dr. Wingate first indicated a duration of 8 to 16 months as the length of time Mr. Duggan will be impaired with available treatment. Then, in response to "[w]ould vocational training or services minimize or eliminate barriers to employment," Dr. Wingate put an "X" in the "Yes" box. Tr. 718. However, because the doctor provided no further explanation and the remainder of her report is silent as to vocational training or services, one cannot reasonably conclude that there is an inconsistency, and if so, that it is one which is inconsistent with Dr. Wingate's opinion about Mr. Duggan's limitations.

### (c) Findings Within Normal Limits

The ALJ also reasoned that Dr. Wingate's stated limitation was undermined by objective findings within "normal" limits (*i.e.*, logical and linear speech, good grooming, cooperative behavior, full and congruent affect, thought process and content, orientation, perception, fund of knowledge, concentration, and abstract thought). Tr. 718-19, 742-43, 859-60. The ALJ fails to explain how these findings undermine Dr. Wingate's consistent opinion (both in 2013 and 2015) that Mr. Duggan would have difficulty sustaining persistent concentration in a normal workday or workweek. However,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

1  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Here, the ALJ erred by failing to

2  provide a sufficient explanation as to why the ALJ's interpretation rather than Dr. Wingate's is

3  correct.

### 2. Dr. Packer

On June 21, 2013, Dr. Packer completed a Washington State Department of Social Health Services (DSHS) Disability/Incapacity Determination of Mr. Duggan.  Tr. 734-38.  Dr. Packer diagnosed panic disorder with symptoms of anxiety and decreased energy at severity ratings of 4 and a GAF of 48.  Dr. Packer also noted significant (moderate) limitation of Mr. Duggan's ability to "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances."  Tr. 736.  Dr. Packer indicated that the effect on work activity was not due primarily to alcohol or drug abuse/addiction.  Tr. 734.

The ALJ mistakenly identified Dr. Wingate as the author of Dr. Packer's opinion and concluded that it was inconsistent with Dr. Wingate's earlier opinion regarding the impact of alcohol on Mr. Duggan's functionality.  Tr. 30 (citing Tr. 718).[4]  The ALJ also concluded that the GAF score "was inconsistent with Mr. Duggan's reported activities."  Tr. 309.

The ALJ erred in his evaluation of Dr. Packer's opinion, not merely because he misidentified the author of the opinion, but because there is no inconsistency in the medical evidence as to the impact of alcohol on Mr. Duggan's functional capabilities.  Dr. Wingate concluded that Mr. Duggan's "current impairments" would "persist following 60 days of

---

[4] The ALJ also noted that Dr. Packer's opinion was inconsistent with a notation by Dr. Ochoa (who saw Mr. Duggan in the emergency room on one occasion, on June 14, 2013, for palpitations and anxiety), that Mr. Duggan has persistent anxiety complicated by alcohol dependence and anxiety disorder.  Tr. 30 (citing Tr. 767).  However, Dr. Ochoa made no determination as to whether Mr. Duggan's functional impairments were caused by any concurrent substance abuse.

sobriety." Tr. 718. Thus, Dr. Packer's opinion that the effect on Mr. Duggan's work ability was "not primarily" due to alcohol was not inconsistent with Dr. Wingate's opinion. Both doctors concluded that Mr. Duggan's functional impairments were not caused by any concurrent substance abuse. Tr. 718, 758. The ALJ also failed to explain how Mr. Duggan's reported activities were inconsistent with his inability to "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances." Finally, because Dr. Packer's Disability/Incapacity Determination was a "New Decision" of DSHS (Mr. Duggan was approved for disability with an onset date of 5/15/2013 for 12 months) (Tr. 735), the ALJ was required to provide persuasive, specific, and valid reasons for not according the Washington State decision great weight. *See Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010) (a decision of another agency is ordinarily entitled to great weight when that agency's disability program bears a "marked similarity" to the Social Security disability program); Wash. Admin. Code § 182-512-0050 (2014) (previously codified as Wash. Admin. Code § 388-475-0050) (providing for use of the five-step Social Security analytic framework.))

### 3. Dr. Comrie

State consultant Matthew Comrie, Psy.D., concluded that Mr. Duggan would have moderate difficulties completing a normal workday and workweek without psychologically-based interruptions and noted that Mr. Duggan may have interruptions from maintaining concentration for extended periods due to residual symptoms. Tr. 444-445. The ALJ gave partial weight to this decision (and a similar opinion given by Gary Nelson, Ph.D. in September 2013), but concluded that the noted limitations regarding attendance and maintaining concentration – even if Mr. Duggan were "more limited than found herein" – were adequately

addressed in the RFC by "the simple and routine nature of the occupations identified, and the time off task they allow." Tr. 308.

The ALJ provides no basis for concluding that a "moderate limitation" in the ability to complete a normal workday and workweek without an unreasonable number and length of rest periods, would be allowed in a job (even one requiring only simple and routine work). The ALJ identified jobs that allow a worker to be off task for up to 10 percent of the work-day. Tr. 308, 311. This is consistent with the VE's testimony that an allowance for regular breaks *plus* an additional allowance of up to 10 percent of being off task were what was "typically" and "traditionally" allowed by employers, and that employers tolerate 8-10 absences a year. Tr. 364-365, 367-368. Thus, the 10 percent off task and 8 to 10 absences per year are part of a "normal workday and workweek." In Dr. Comrie's opinion, Mr. Duggan would not be able to complete a "normal workday and workweek" without interruptions. Thus, the ALJ's conclusion that a moderate limitation in this function would be accommodated by the normal work allowances is contrary to the plain wording of the limitation and is error. This error is harmful because the VE testified that limitations requiring extra breaks, being off task more than 10 percent of a work day, or being absent more than 8-10 days in a year, would all preclude the performance of competitive employment. Tr. 364-369.

**C.      The ALJ's Credibility Determination**

The ALJ did not find Mr. Duggan was malingering and was therefore required to provide clear and convincing reasons to discount his testimony. *Lester*, 81 F.3d at 834. Here, the ALJ discounted Mr. Duggan's testimony based on his inconsistent statements about his alcohol and drug use, activities of daily living, reasons he stopped working, lack of follow through with treatment and medications, inconsistent histories of significant mental health treatment, reported

activities, and college attendance. Tr. 14-17. The Commissioner argues that the ALJ sufficiently explained his reasons for discounting Mr. Duggan's testimony and even if the ALJ erred, the Court should still uphold the credibility determination because the ALJ provided multiple valid reasons to support the ultimate adverse credibility finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (where some reasons supporting an ALJ's credibility analysis are found invalid, the error is harmless if the remaining valid reasons provide substantial evidence to support the ALJ's credibility determination). The Court agrees that the ALJ provided at least one valid reason for his adverse credibility finding.

For example, the ALJ found that Mr. Duggan made multiple inconsistent statements regarding his marijuana and alcohol use. An ALJ may discount a claimant's testimony based on inconsistent statements made by the claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Mr. Duggan does not contest the ALJ's findings as to the inconsistencies but argues that a wide-ranging scrutiny of the claimant's character and apparent truthfulness is not allowed pursuant to that SSR 16-3p (2016). Mr. Duggan is correct. However, SSR 16-3p (2016) simply "makes clear what [Ninth Circuit] precedent already required: that assessment of an individual's testimony by an ALJ is designed to 'evaluate the intensity and persistence of symptoms'" related to a medically determinable impairment. *Trevizo v. Berryhill,* No. 15-56277 (9th Cir. Filed July 10, 2017, amended September 14, 2017).

Here, Mr. Duggan made inconsistent statements regarding how his marijuana use alleviated or aggravated his anxiety symptoms. Tr. 304 (citing Tr. 716, 773, 775, 858, 864, 910). In July 2013, he told one provider that he smoked marijuana to control his anxiety but in June 2014, he told a different provider that he could not smoke marijuana because it increased his anxiety. Tr. 304 (citing Tr. 773, 775, 910). Similarly, Mr. Duggan gave varied reports to his

medical providers about the amount and frequency of his drinking and skipping his psychiatric medications in favor of alcohol. These inconsistent statements directly relate to his alcohol dependency and medical observations that alcohol complicates his anxiety. Tr. 303-304; Tr. 906.

Because the effectiveness and side effects of medication is relevant to evaluating symptom testimony, 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), the ALJ permissibly discounted Mr. Duggan's testimony for providing inconsistent statements on whether marijuana alleviated his anxiety symptoms and the effect of his alcohol consumption on his anxiety.

Accordingly, the ALJ gave a valid reason to discount Mr. Duggan's credibility. This reason— inconsistent statements about substance use—is a recognized clear and convincing reason to discount a claimant's testimony, and as discussed above is supported by substantial evidence. Thus, the Court need not discuss the other reasons given by the ALJ even if some or all of the other reasons given were erroneous. *Carmickle*, 533 F.3d at 1162-3.

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess the opinions of Dr. Wingate, Dr. Packer, and Dr. Comrie and develop the record as needed (specifically with regard to Mr. Duggan's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis in light of anticipated interruption from his panic disorder), assess Mr. Duggan's residual functional capacity, and proceed to steps four and five.

1 | The Court **AFFIRMS** the ALJ's denial of Mr. Duggan's subpoena request at the July 20,
2015 hearing. The Court also **AFFIRMS** the ALJ's assessment of Mr. Duggan's credibility because the ALJ gave at least one valid reason that was supported by substantial evidence.

DATED this 13th day of November, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge